Good morning, and welcome to the Ninth Circuit. We've submitted several cases already. They are Valdez-Zamacona v. Blanche, Otero-Rosas v. Blanche, Quanzepeda v. Blanche, and People of State of California v. Chiquita Canyon LLC. The first case we have for argument is Luong v. Blanche. Hopefully, counsel, you can hear us. I can hear you, your honor. Good morning. Good morning to all honors. Counsel, whenever Mr. Jurado, whenever you're ready, you can begin. Hopefully, you can see the clock, so if you want to reserve time for rebuttal, just pay attention to the clock. Okay. May it please the court, I reserve two minutes for rebuttal. My name is Michael Jurado, and I represent the petitioner in this matter, Mr. Chan Luong. Here, the BIA never had the opportunity to evaluate Mr. Luong's diligence under the legal standard that this court recently articulated under Escalian. The immigration judge himself found that removability was unattainable for decades due to the repatriation of Vietnamese nationals. Escalian requires that these facts be evaluated under the correct diligence standard that is present today before this court. Because that standard was never properly evaluated by the BIA, this court should remand. This case comes down to when should the diligence clock have started running for Mr. Luong? Well, the BIA said it started in 1991 when he was placed in deportation proceedings, but Escalian says something different. It says that the petitioner who cannot be realistically removed, the diligence clock does not start until that removability becomes a realistic possibility. Mr. Luong could not realistically be removed for decades. Immigration said so in his findings when he denied the original motion to reopen that it could not be effectuated due to the repatriation to Vietnam was unobtainable for policies at the time. Should we remand to the BIA for the BIA to consider Escalian in the first instance, or should we try to apply it here? Well, Your Honor, I believe we should remand to the agency. They have not yet analyzed the Escalian doctrine. They need to analyze it on its first instincts. Doing so today before this court without having the opportunity for the agency to make their own findings would not be correct. So I believe the court should be remanded so the BIA gets its opportunity. Okay. And my only second question is, Escalian relies heavily on the fact that the petitioner was a stateless person. Your client is a Vietnamese, and so it's not quite the same. Is that the distinction that would make a difference in this case? Yes, Your Honor. The petitioner in Escalian was stateless. Mr. Luong, in our case, is a Vietnamese, so he's not stateless. But that doesn't necessarily change the analysis in a sense because Mr. Luong has been here for decades, and we can show that the government wasn't able to effectuate his removal because he was on an order of supervision for years, coupled with the bilateral agreement that the United States had with Vietnam at the time. So there is a distinction can be made from statelessness to an individual who cannot be removed from this country. In your view, when should the clock have started for him to file a motion to reopen? I think the record supports that as early, there's no exact date, but I think the record supports a factual finding of no earlier than 2017 when the immigration judge said in his decision, denying the motion to reopen, that the United States was beginning to repatriate the Vietnamese nationals as early as 2017. So I believe that's when the clock should start no earlier than 2017, not 1991, where the board and the immigration judge started the clock. In Eskillion, the board actually provided notice to Eskillion that she was now removable, that there was a way to remove her. Has that ever happened here? Well, Your Honor, my client, Mr. Luong, in his declaration that he provided in the motion to reopen, there's no specific date where he became aware, nor he was told he was ordered, he would be effectually removed. He just did a Google search on his own sometime in 2018, and he acted. He hired counsel to hire for the 1473 motion to vacate in California. Additionally, for years, sometime in 2012 and 2013, one of Mr. Luong's previous counsel indicated and told him that it was nearly impossible for him to be sent back to Vietnam, and he was not going to be removed. So for years, that he didn't act because it wasn't possible. Was the agreement with Vietnam to not repatriate enacted before his final order of removal? Yes. I apologize, Your Honor. It is for when Vietnamese nationals who entered pre-July 12, 1995, and Mr. Luong entered this country as a refugee at the roughly at the age of four in 1986, I believe, or 87, well before the 1995 date, the repatriation treaty analyzed. My understanding is in 2008, there was an agreement to start repatriating some people to Vietnam, but that they agreed they would not repatriate anyone who arrived here before 1995. So I think before 2008, there was no one being repatriated to Vietnam. Is that correct? Yes, Your Honor. Yes and no, because the Memorandum of Understandings began with starting after 1995. They made a distinction between pre-95 and after 95. Right. The way I see it, in 2008, they said we're going to start repatriating people to Vietnam, but only people who arrived here after 1995. Is that correct? That is correct, Your Honor. That implies before 2008, they weren't repatriating anyone. Is that correct? That is correct, Your Honor. Before 2008, no Vietnamese nationals were being repatriated back to their home country. And then, I'm not sure what was happening between, it's unclear. It seems to me that there's a new agreement as of November 2020 that allows for repatriation of people who entered before 1995, but it's not clear to me what was happening between 2017 and 2020. Maybe that's a question for the government's counsel, but it seems to me there was no official agreement until November 2020. Is that correct? That is correct, Your Honor. Yes. So, going back, Your Honors, the due diligence is, well, let me backtrack. This argument doesn't just live and die by the scaling argument or the equitable tolling. There's another issue. There's independent grounds for remand, such as missing the 2022 VATICOR order in and of itself, which is material evidence that affects Mr. Luong's removability. And the BIA still had not the opportunity to view the complete record of the VATICOR, nor analyze the new correct due diligence standard. So, if we were to remand back to the board, they can analyze under the correct standard with the facts already in this record, in addition to being able to view the complete 2022 VATICOR order. Do you understand what happened after? So, there was a motion, 1473.7 motion, and then there was the state court reduced the conviction, right? Modified the conviction from, I think, second degree robbery to first degree robbery. And then it's unclear to me, was there an appeal? Was there a second motion? Was there something else that resulted in a complete VATICOR? Or is that something that you're saying needs to be established in a new? There was a secondary motion that, but that's not in the administrative record, Your Honor. So, he did make, my client did have a second motion to vacate in 2022, and it's not in the record. Okay. Counsel, you have about a minute if you want to save that time. Can I save it for rebuttal, Your Honors? Yes. Thank you. Great. Thank you. Ms. Nehas, whenever you're ready. Good morning, Your Honors. May it please the court, my name is Rebecca Nehas, and I'm representing the United States Attorney General. The court should dismiss the petition in part and deny in remaining part. Petitioner waived any challenge to the agency's denial of sua sponte reopening. So, the court should dismiss the petition as to that claim. The only issue before the court is petitioner's statutory motion to reopen, which is undisputedly filed 24 years late. And so, the question before the court is due diligence. And the agency acted well within its discretion in finding that petitioner did not satisfy the due diligence requirement to warrant equitable tolling of the filing deadline. And Ascillion does not change that result for at least three reasons. First, petitioner did not exhaust the claim that was raised in Ascillion. Petitioner, instead of arguing that he should be excused from the filing deadline because he was not removable, instead of arguing that, he said he was diligent because he filed within a reasonable period of 1473 being enacted. And even though Ascillion hadn't been decided yet at the time of briefing, he could have, just like the petitioner in Ascillion, raised this claim in the first instance. But counsel, is that really a claim? The claim was that he was regionally diligent, and so, therefore, the tolling should be excluded. I don't think you have to make that precise argument in order for it to put the BIA on notice of what reasonable diligence would be. Well, I think that the agency reasonably applied the BEDS standard of when a reasonable person would have learned of the adverse consequences of a criminal conviction, and that was an NTA. Right. And then Ascillion says that a reasonable person wouldn't be concerned about that if there's no possibility of removal. Right. So, at no point was this claim raised before the agency. That's my point. Is that a claim? That's not a claim. That's just an argument. Right. But I do think that... The claim is reasonable diligence, right? Sure, Your Honor. But I think that the argument itself also needs to be exhausted in order to provide the agency an opportunity to consider it. But... Do you have precedent that suggests that that type of fine-tune and exhaustion is required? I just don't think... I thought it's under our precedence just whether or not the BIA is put on notice of what's being challenged. I don't have anything off the top of my head, Your Honor. I apologize, and I'm happy to turn to our secondary arguments that even if this claim is exhausted, that Ascillion does not change the outcome of this case. First, petitioner did not provide the date on which he learned that he could be removed as the petitioner in Ascillion did. Well, in Ascillion, the agency, the record reflected the agency actually specifically told Ascillion, you're now removable. So it seems to me that that's possible that it's not in the record because that's never happened here. In which case, it would seem that Mr. Long has actually been far more diligent than Ascillion because he's been acting even without any such notice. Well, I don't know that the absence of evidence that he was told means that he wasn't told. He was appearing for his supervised periodic meetings with ICE. I think the last one was in 2018. And I don't think it's unreasonable to assume that at that point, at least when he filed his motion to reopen, at the very least that he was aware of that he could possibly be removed. But in any event, Your Honor, there's also a reasonable person standard. And so Ascillion was focused on the subjective nature of the inquiry. So petitioner in that case said that she learned of the removability in 2018. But there's also an objective component of when would a reasonable person have learned of the removability of Vietnamese nationals. And we think that as petitioner acknowledges, a reasonable person would have learned around 2017 when the first Trump administration began removing Vietnamese nationals. And even petitioner's attorney's affidavit indicates that this was common knowledge, not only among immigration practitioners, but also Vietnamese citizens. And that it was widely noted in the media that the administration had begun removing individuals to Vietnam as early as 2017. So even if we measure, if we generously measure the point at which we assess diligence from 2017, we still have a failure in proof because the next thing that we know is he hired an attorney in December of 2018. So that's at least a year gap where he was not pursuing his rights. And so I think that the diligence finding is the same either because- But counsel, that requires some fact-finding, doesn't it? And so shouldn't we remand to the BIA to do that fact-finding in the first instance? Well, I think that it would be futile just because of the nature of the evidence before the court. And this is a motion to reopen that petitioner bears the burden of proof, and it's a heavy burden of presenting the evidence and making out the claim. And we just don't have sufficient facts. The IJ said 2017. So even using that, it's a foregone conclusion that he- I mean, first of all, the IJ didn't have the benefit of a skillion, neither did the petitioner. But also, I mean, it seems to me that at most we have is a limited report of some discussion of limited returns in 2017. And we don't have an actual agreement to repatriate people in the circumstances of Mr. Long until 2020. Is that correct? That's my understanding, Your Honor. But I do think we have the affidavit from his attorney indicating that it was widely known that the U.S. had begun removal efforts with Vietnamese citizens. But our third argument, I think, is it's independently dispositive, and I think doesn't really turn on this skillion framework. And this is even if we assume that petitioner to toll the deadline through the date that the state court vacated the conviction, he still waited one year after that date to file his motion to reopen. And he hasn't provided any explanation for that failure to- That depends on really when he was- because under a skillion, one argument would be that he didn't have to start doing anything until the agency said circumstances have changed and you are now subject to repatriation to Vietnam. And it's not clear to me that's ever happened, in which case everything he did was more than was reasonably required under a skillion. Especially if there was no formal agreement to start right now. It seems to me he was continuing efforts to get complete vacator of his conviction, which would be another form of diligence. So I'm not sure. It's just, I think, part of the problem here is that we don't have a complete record of what was occurring, what the agency actually informed Mr. Leung, and when there was actually a realistic possibility that he was going to be removed to Vietnam, and whether he was notified of that by the agency. So it seems to me that there's been a significant change in the law that needs to be reconsidered on remand. To your question about the record, yes, I do agree that the record has a lack of evidence, but I think that that burden rests on petitioner having been the party moving for reopening. And I think it would be an unreasonable read of a skillion to carry the date of when we measure diligence to the present if the petitioner never learned. I think there needs to be a reasonable person standard as the court has applied in every other context in assessing due diligence. I think it would be unreasonable to say that the person gets to carry the deadline, you know, especially, you know, what prevents them from sticking their head in the sand and not learning about this in order to benefit from this equitable tolling argument. And then I think with regard to, sorry, with regard to the evidence of the new vacature, I think that the proper course would be for petitioner to file a motion to reopen. This is new evidence. It was never submitted or considered by the agency. And so we don't think that that's a proper basis to remand. Council, before we move on, you're running out of time. I did have one other question about the alternative basis. So it seems to me that IJ denied, said even if there was equitable tolling, 1473.7A1 grant, you know, for the, would not, essentially would be a vacature for, to avoid immigration consequences. But we held the otherwise in bent. We said it's actually a procedural or substantive vacature. And the BIA didn't seem to adopt the IJ's reasoning. It just said it wasn't clear which subsection of 1473.7 the motion was granted under. But I'm not sure why that matters now, because both A1, A2, and A3 would all be now after bent substantive or procedural reasons for vacating or modifying the conviction. Is there, so it seems to me there's also a, is there a reason why the BIA, it mattered which subsection the motion was granted under? I'll just start by stating our position that this issue has been waived because petitioners opening brief changed course and argued to have a vacature under A3, not A1. So we will continue to argue that that issue is waived. But I would like to answer your question that we believe that the, I think that you're right, that regardless of what subsection 1473, I do think that it, sorry, the IJ, the court need not decide or reach that the board's decision regarding whether petitioner proved which subsection the provision was vacated under because even if he proved it was A1, which was his claim below, the IJ's decision is correct because we, our position, the government's position is that bent has not decided the question of whether a vacature under A1 is substantive or procedural because the court looked at the plain language and remanded for the agency to decide that question on remand. And we think that there remains an argument that the vacature under 1473 A1 expands the rights of individuals beyond what the constitution, the federal constitution requires. And therefore the government doesn't, it doesn't meet the federal standard of whether immigration conviction remains valid for immigration purposes. And this is of course something that we didn't brief because we, our position is that it was waived, but that is our position. Okay. I understand. Great. Thank you. Thank you. Thank you, your honors. Whenever you're ready, Mr. Harada. Thank you, your honor. I'll be short. Yes. All of the facts, although the record in this case is not complete, the factual building box are complete in this case, enough for the Iscalian framework to be properly analyzed on its first instance for the board with remand, the board can view the complete record, apply the correct legal framework as it stands today, and then make its decision after analyzing the complete record as it is. Thank you. Great. Thank you both for the helpful argument and apologies to both for mispronouncing your last names. I guess I was equal in botching both of your names. So thank you. The case is submitted.
judges: LEE, BUMATAY, SUNG